**BLACKBURN, NICKELS & SMITH, INC., Plaintiff, Appellee and Cross–Appellant,**

and

**Rued Insurance, Inc., Plaintiff, Appellant and Cross–Appellee,**

v.

**NATIONAL FARMERS UNION PROPERTY AND CASUALTY COMPANY, and Aetna Casualty & Surety Co., Defendants, Appellees and Cross–Appellants.**

Civ. No. 910269.

Supreme Court of North Dakota.

March 19, 1992.

Olson, Sturdevant and Burns, Minot, and Blomquist & Espeset, Minneapolis, Minn., for plaintiff, appellee, and cross-appellant; argued by Barry L. Blomquist, Jr. Appearance by Michael G. Sturdevant.

Zuger, Kirmis, Bolinske & Smith, Bismarck, for plaintiff, appellant, and cross-appellee; argued by Brent J. Edison. Appearance by Patrick J. Ward.

Fleck, Mather & Strutz, Bismarck, for defendant, appellee, and cross-appellant National Farmers Union Property and Cas. Co.; argued by Curtis L. Wike. Appearance by Steven A. Storslee.

Nilles, Hansen & Davies, Ltd., Fargo, for defendant, appellee, and cross-appellant Aetna Cas. & Sur. Co.; argued by Leo F.J. Wilking.

ERICKSTAD, Chief Justice.

This is an appeal from a declaratory judgment in an insurance coverage dispute involving an October 7, 1985 automobile accident. The district court ruled that Scott Smith, d/b/a Smitty's Lawn Service (Smith), was insured by Aetna Casualty & Surety Company (Aetna) and that Aetna was entitled to indemnity against Rued Insurance, Inc. (Rued). We affirm.

The accident involved a collision between a vehicle, owned by Smith and driven by an employee, Mark Dagner (Dagner), and a vehicle driven by Kenneth Amstutz and occupied by Kenneth's mother, Alta Amstutz. Alta and her spouse, Robert, filed an action against Dagner and Smith. Kenneth brought a separate action against them.

Lyle Dagner, Mark's father, had a personal automobile liability insurance policy with National Farmers Union Property & Casualty Company (Farmers Union). Smith alleged that he had liability insurance coverage on his vehicle with Aetna. Both Farmers Union and Aetna denied cov-

erage for the accident and refused to defend Dagner or Smith in the Amstutzes' lawsuits. Dagner and Smith then filed a third-party complaint against Rued, an independent insurance agency representing several insurers, including Aetna, alleging that Rued breached its promise to procure a liability insurance policy for Smith with Aetna in April 1985. Rued filed a third-party complaint against Blackburn, Nickels & Smith, Inc. (BNS), an insurance brokerage firm, alleging that BNS negligently failed to obtain insurance coverage for Smith.

Thereafter, Rued paid and settled all claims between the Amstutzes and defendants, Dagner and Smith. Rued also paid all of Dagner and Smith's defense costs associated with the accident. As part of the settlement, Dagner and Smith dismissed their claims against Rued and released Rued from further liability. As a consequence of the settlement, all pending lawsuits were dismissed with prejudice except for Rued's action against BNS. Rued then agreed to dismiss, without prejudice, its action against BNS for the sole purpose of having BNS bring this declaratory judgment action against Farmers Union and Aetna. The trial court dismissed the action, concluding that a declaratory judgment action was an inappropriate vehicle for settling the remaining controversy among the parties.

BNS appealed to this court. In *Blackburn, Nickels & Smith, Inc. v. National Farmers Union Property & Casualty Company*, 452 N.W.2d 319 (N.D.1990), we held that a declaratory judgment action was a proper vehicle for settling this controversy, and we remanded the case for a determination of the questions raised.

The trial court heard the case on remand and entered a judgment declaring that Smith had automobile liability insurance coverage with Aetna for the October 7, 1985 accident and that Aetna was entitled to "complete indemnification" from Rued. The court also declared that Farmers Union "had coverage in the amount of the minimum limits required by the Safety Responsibility Law for Mark Dagner" but

that the coverage was "excess and secondary" to the coverage provided by Aetna. Rued appealed, and BNS, Farmers Union, and Aetna filed cross appeals.

On April 16, 1985, Scott Smith asked Rued's insurance agent, Corinne Savelkoul, to provide him with liability insurance coverage for his commercial lawn spraying business and for his vehicles. Smith gave Savelkoul $200 as a down payment for the insurance premium. Savelkoul gave Smith an oral insurance coverage binder and then sent an application for the coverage to Aetna.

On April 26, 1985, before Aetna had any contact with Rued about the application, Savelkoul, at Smith's request, gave him a Certificate of Insurance showing that Smith had insurance coverage with Aetna until April 1, 1986—general liability insurance of $500,000 and automobile liability insurance coverage of $300,000. On the Certificate of Insurance, under the column marked "policy number" Savelkoul had typed in the word "pending." Savelkoul gave Smith a copy of the Certificate of Insurance and retained other copies of the certificate in Rued's offices. Neither a copy of the Certificate of Insurance nor any information as to its contents were ever transmitted by Rued to Aetna.

A few days after Savelkoul issued the Certificate of Insurance to Smith, she received a telephone call from Nancy Abbott, an underwriter employed by Aetna at its Minneapolis–St. Paul offices. Abbott told Savelkoul that Aetna would not provide commercial liability insurance for Smith because of the dangerous chemicals used in the business but that, as a courtesy to Smith, Aetna would provide temporary automobile liability insurance coverage for Smith until Rued could place coverage with another company. Abbott told Savelkoul that the temporary coverage was not to extend beyond June 1, 1985. Savelkoul then prepared another application which she sent to BNS, requesting them to place insurance coverage for Smith.

When Smith notified Rued about the October 7, 1985 accident, Rued asked BNS to forward an insurance policy showing that

Smith had coverage. BNS denied that it had agreed to secure coverage for Smith, and Rued then returned to Smith the $200 insurance premium that he had paid in April 1985.

In its cross appeal, Aetna asserts that the trial court erred in concluding that Smith had liability insurance coverage with Aetna on the date of the accident. Aetna claims that Smith was not insured by Aetna at that time because the oral temporary binder had expired by June 1, 1985. It appears that Aetna has misconstrued the basis for its liability in this case, which is predicated upon the Certificate of Insurance issued to Smith by Rued, and not upon the oral binder of insurance.

■ A Certificate of Insurance is a document evidencing the fact that an insurance policy has been written and includes a statement of the coverage of the policy in general terms. Black's Law Dictionary (5th ed. 1983). A Certificate of Insurance is an insurance company's written statement to its customer that he has insurance coverage, and the insurance company is estopped from denying coverage that the Certificate of Insurance states is in effect. *Riske v. National Casualty Company*, 268 Wis. 199, 67 N.W.2d 385 (1954). *See also Mercado v. Mitchell*, 83 Wis.2d 17, 264 N.W.2d 532 (1978); *J.M. Corbett Company v. Insurance Company of North America*, 43 Ill.App.3d 624, 2 Ill.Dec. 148, 357 N.E.2d 125 (1976); *Strain Poultry Farms, Inc. v. American Southern Insurance Company*, 128 Ga.App. 600, 197 S.E.2d 498 (1973).

■ The Certificate of Insurance given to Smith by Rued included the following statement:

"This is to certify that policies of insurance listed below have been issued to the insured named above and are in force at this time."

The certificate also states that it is intended as "information only" and that it does not "amend, extend or alter the coverage" afforded by the listed policies. The trial court correctly summarized the underlying reason that the statement of insurance coverage provided in the Certificate of Insurance must be given legal effect:

"This case must be viewed through the insured, Smith's eyes, who left Rued's premises on April 26, 1985, with a certificate in his hand indicating that he was covered for almost a year and he felt that he in fact did have insurance coverage through Rued."

The trial court subsequently concluded:

"One of the tests of an agents powers is his ostensible or apparent authority. An agent has the power to bind the princip[al]. An agent can make contracts, receive payments and can do all of the other items specified in the agency agreement. Rued was invested with all these powers and under these powers accepted Smith's application and bound coverage through Aetna until the coverage was legally cancelled."

Aetna's employee, Nancy Abbott, testified that Rued's agents had authority to sign and issue binders and certificates of insurance on Aetna's behalf. Smith testified that he relied on the certificate in assuming that he had automobile liability insurance coverage for a year. There is no contrary evidence to dispute this testimony. Rued, as Aetna's agent, had actual authority to write the Certificate of Insurance and at least an ostensible authority to bind Aetna to provide coverage in accordance with the certificate.

The trial court's finding of agency will not be disturbed on appeal unless it is clearly erroneous. *Red River Commodities, Inc. v. Eidsness*, 459 N.W.2d 805 (N.D.1990). The trial court's finding is not clearly erroneous that Rued exercised actual and ostensible authority,[1] as Aetna's representative, in issuing the Certificate of

---

**1.** Actual and ostensible authority of an agent is defined under Section 3–02–02, N.D.C.C.:

"An agent has such authority as the principal actually or ostensibly confers upon him. Actual authority is such as a principal intentionally confers upon the agent or intentionally or by want of ordinary care allows the agent to believe himself to possess. Ostensible authority is such as the principal intentionally or by want of ordinary care causes or allows a third person to believe the agent to possess."

Insurance to Smith certifying a one-year coverage.

■ Section 3–03–03, N.D.C.C., provides when a principal is bound for the acts of his agent in exercising an ostensible authority:

"A principal is bound by acts of his agent under a merely ostensible authority to those persons only who in good faith and without ordinary negligence have incurred a liability or parted with value upon the faith thereof."

There is no finding that Smith acted negligently or without good faith in relying on the certificate for his belief that he had insurance coverage. He paid $200 for that coverage and, in reliance on the certificate's statement of coverage, he did not attempt to secure other coverage. Therefore, we conclude that when Rued issued the Certificate of Insurance to Smith, Smith acquired liability insurance coverage with Aetna, as provided by the certificate. Absent cancellation of the coverage by Aetna in accordance with the terms of its policy, Aetna was liable for the coverage indicated by the certificate. Aetna makes no claim that it cancelled Smith's coverage by notice of cancellation under the policy terms. We hold, therefore, that the trial court did not err in concluding that Smith had automobile liability insurance coverage with Aetna for the October 7, 1985 accident.

■ Aetna also asserts that Smith should not be able to recover, because he did not provide timely notification to Aetna of the accident and did not comply with other "conditions precedent to coverage" as required by the policy. The disposition of this issue is controlled by our decision in *Kippen v. Farm Bureau Mutual Insurance Company*, 421 N.W.2d 483 (N.D. 1988), where we held that the insureds were not precluded from recovering benefits by their failure to notify the insurance company of a settlement agreement, because the insurance company had not provided them with a copy of the policy or other documentation.

It is undisputed that Smith received no policy or other documentation from Aetna.

Following *Kippen, supra,* we hold that Smith cannot be denied benefits from Aetna for his failure to comply with notice or other requirements in a policy document that Aetna did not provide to him.

Rued asserts on appeal that the trial court erred in requiring Rued to indemnify Aetna. Rued argues that Aetna is not entitled to indemnity, because Aetna did not assign to Rued the duty of cancelling policies. Rued's argument shows a misunderstanding of the basis for the trial court's indemnity ruling.

In deciding the indemnity issue the trial court made the following findings:

"... a copy of the certificate of insurance was furnished to Smith. The other copies of the certificate of insurance were retained by Rued. Neither a copy of the certificate of insurance, nor information as to its contents, were transmitted by Rued to Aetna.

\*      \*      \*      \*      \*      \*

"Rued was negligent by its action and/or inaction as an agent of Aetna in the manner in which it handled the insurance application of Smith, and such negligence was the precipitating cause for the coverage found as a matter of law to be furnished by Aetna....

\*      \*      \*      \*      \*      \*

"Aetna's right to indemnification is also based on Rued's failure to furnish Aetna with a copy of the certificate of insurance on April 26, 1985, or information as to the contents of that certificate, which constituted a material breach of the agency agreement between Aetna and Rued."

Because Rued failed to inform Aetna about the contents of the Certificate of Insurance, Aetna had no knowledge that Smith had liability insurance coverage with Aetna through April 1, 1986. Without that knowledge, Aetna was unaware that it had to cancel Smith's coverage if it did not want to insure him for that entire period.

The agency agreement between Aetna and Rued provided:

"The Agent agrees to forward to the Company copies of all binders, policies, certificates and endorsements issued by the Agent, or to otherwise notify the Company of all liability accepted, within three business days following issuance or acceptance by the Agent."

Rued, therefore, had a contractual duty to notify Aetna of all liability accepted, either by sending copies of the relevant documents or by other appropriate methods of communication.

As an insurance agent, Rued also had a duty to exercise the skill and care which a reasonably prudent person engaged in the insurance business would use under similar circumstances. *Rawlings v. Fruhwirth*, 455 N.W.2d 574 (N.D.1990). Rued did not send Aetna a copy of the Certificate of Insurance that it had issued to Smith, nor did it otherwise inform Aetna of the contents of the Certificate of Insurance. Rued failed to provide this information even though Rued had knowledge that Aetna did not want to provide any insurance coverage for Smith beyond June 1, 1985.

Indemnity is a remedy which secures the right of a person to recover reimbursement from another for the discharge of a liability which, as between them, should have been discharged by the other. *Sayler v. Holstrom*, 239 N.W.2d 276 (N.D. 1976). A right to indemnity exists if one party is exposed to liability by the action of another party who, in law or in equity, should make good the loss of the other. *Johnson v. Haugland*, 303 N.W.2d 533 (N.D.1981). One is entitled to indemnity if he has incurred liability because of a breach of duty owed to him by the one sought to be charged. *Sayler, supra*, 239 N.W.2d at 280.

We agree with the trial court that Rued's failure to keep Aetna informed constituted a material breach of its duties under the agency agreement and that Rued acted negligently in handling Smith's application. The trial court's findings on this issue are not clearly erroneous and, therefore, will not be overturned on appeal.

Rule 52(a), N.D.R.Civ.P. Consequently, we hold that the trial court did not err in awarding Aetna indemnity from Rued.

BNS asserts on appeal that the trial court erred in failing to include as part of its judgment a dismissal with prejudice of Aetna and Farmers Union's counterclaims against BNS. No party objected to BNS's request. Accordingly, we deem Aetna and Farmers Union's counterclaims against BNS to have been implicitly dismissed with prejudice by the trial court in this case.

Aetna asserts that the trial court erred in refusing to award it costs and disbursements. Pursuant to Section 28–26–10, N.D.C.C., in all actions other than those specifically enumerated, costs may by allowed for or against either party in the discretion of the court. The trial court's determination under this statutory provision will not be overturned on appeal unless the court has abused its discretion. *Courchene v. Delaney Distributors, Inc.*, 421 N.W.2d 811 (N.D.1988). Pursuant to Section 28–26–06, N.D.C.C., the clerk is directed to tax as part of the judgment in favor of the prevailing party, that party's necessary disbursements as enumerated under the statute.

When each party prevails on some issues in the district court, there is no single "prevailing party" against whom the clerk can tax disbursements under Section 28–26–06, N.D.C.C. *Liebelt v. Saby*, 279 N.W.2d 881 (N.D.1979). Although Aetna prevailed on the issue of indemnity, it did not prevail on the issue that Smith had liability insurance coverage with Aetna. Consequently, we are not convinced that there was error in not taxing disbursements in Aetna's favor under Section 28–26–06, N.D.C.C., nor are we convinced that the trial court abused its discretion in refusing to award costs to Aetna under Section 28–26–10, N.D.C.C.

Aetna also asserts that Rued's claims were frivolous, and, therefore, the trial court erred in refusing to award Aetna reasonable attorney fees under Section 28–26–01, N.D.C.C., which, as amended by the Fiftieth Legislative Assembly in 1987

(1987 N.D.Sess.Laws Ch. 387, § 1), provides:

"In civil actions *the court shall, upon a finding that a claim for relief was frivolous, award reasonable actual and statutory costs, including reasonable attorney's fees to the prevailing party. Such costs must be awarded* regardless of the good faith of the attorney or party making the claim for relief *if there is such a complete absence of actual facts or law that a reasonable person could not have thought a court would render judgment in their favor,* providing the prevailing party has in responsive pleading alleged the frivolous nature of the claim. This subsection does not require the award of costs or fees against an attorney or party advancing a claim unwarranted under existing law, if it is supported by a good faith argument for an extension, modification, or reversal of the existing law." [Emphasis added.]

Prior to the 1987 amendments, this provision expressly left it within the trial court's discretion whether or not to award attorney fees when an opposing party brought a frivolous claim. *See Lang v. Bank of Steele,* 415 N.W.2d 787 (N.D.1987). The 1987 amendments deleted the discretionary language. The provision now requires the court to award attorney fees if the court finds that an opponent's claim for relief is frivolous. However, as amended, the statute still retains language that the award must be made only "if there is such a complete absence of actual facts or law that a reasonable person could not have thought a court would render judgment in their favor...." Rued prevailed on its assertion that Smith had insurance coverage with Aetna at the time of the accident and on its assertion that Dagner had insurance coverage with Farmers Union at that time. Rued argued that Aetna should not receive indemnification from Rued, but lost on that issue. However, the outcome on the indemnity issue was not so certain nor Rued's position so lacking in supportive facts or law, that a reasonable person could not have thought that Rued might prevail on that issue. Consequently, we conclude that the trial court did not err in refusing to award reasonable attorney fees to Aetna.

The trial court determined that Mark Dagner had liability insurance coverage with Farmers Union for the October 7, 1985 accident but that the coverage was "excess and secondary to the coverage provided by Aetna." Farmers Union raised several issues on appeal, but during oral argument agreed that those issues would not have to be addressed by this court, if we affirmed the trial court's conclusion that Smith had liability insurance coverage with Aetna for the accident. Other issues have also been raised by the parties that are not dispositive of this appeal. Questions, the answers to which are not necessary to the determination of a case, need not be considered. *Hospital Services, Inc. v. Brooks,* 229 N.W.2d 69 (N.D.1975). Having affirmed the trial court's conclusion that Smith had insurance coverage with Aetna, we need not address those other issues.

In accordance with this opinion, the judgment of the district court is affirmed.

VANDE WALLE, LEVINE, MESCHKE, JJ., and VERNON R. PEDERSON, Surrogate Judge, concur.

VERNON R. PEDERSON, Surrogate Judge, sitting as a member of the Court to fill the vacancy created by the resignation of Justice H.F. Gierke III. Justice Johnson not being a member of this Court at the time this case was heard did not participate in this decision.